IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


DEON IVA BUCHER,                                    Civil No. 3:15-cv-00823-PK

       Plaintiff,


                                         OPINION AND ORDER

v.


CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.
_____

PAPAK, Magistrate Judge:

       Plaintiff Deon Iva Bucher filed this action May 14, 2015, seeking judicial review of the

Commissioner of Social Security's final decision denying her application for disability insurance

benefits (DIB) under Title II of the Social Security Act.   This court has jurisdiction over

plaintiff's action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).


Page 1 - OPINION AND ORDER

I have considered all of the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision is affirmed and this matter is dismissed.

## BACKGROUND

Bucher protectively filed an application for DIB on August 31, 2011, alleging disability beginning on October 27, 2008, due to "obesity, bursitis, torn ACL PCL, bulging discs [and] depression." Tr. 150, 176. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge (ALJ). Tr. 111-12. After a December 3, 2013 hearing, the ALJ found Bucher not disabled. Tr. 36-69. The Appeals Council denied review, and on May 14, 2015, Bucher sought review in this court.

Bucher contends the ALJ erred by failing to give proper weight to medical evidence, erroneously assessed her credibility, and failed to properly assess her residual functional capacity after completing step three, and for those reasons erred by finding Bucher capable of performing her past relevant work.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step

does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge ("ALJ") considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-154. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.*,

/ / /

/ / /

Page 3 - OPINION AND ORDER

*quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 404.1520(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 404.1545(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*,

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(a)(4)(iv), 404.1520(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404,1520(g), 404.1560(c), 404.1566. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to

support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.*, *quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id.*, *citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## SUMMARY OF ADMINISTRATIVE RECORD[2]

Bucher was 41 years old on her alleged onset date of October 27, 2008. Tr. 150.[3] She has a high school education and past relevant work as a loan processor and office specialist/secretary. Tr. 64-65, 177.

/ / /

---

[2] The following recitation constitutes a summary of the evidence contained within the Administrative Record, and does not reflect any independent finding of fact by the court.

[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 14.

## I. The Medical Record

The parties are familiar with the extensive medical record. Therefore, it will be set out below when relevant.

## II. The December 31, 2011 Adult Function Report

Bucher completed a Function Report in which she states she has severe bursitis in her hip, torn ligaments in both knees, bulging discs, and a possible pinched nerve in her back. Tr. 184. She is unable to walk "any distance" because her hip will "give out." *Id.* Bucher asserts she is unable to sit for long periods due to back pain. She contends she has severe depression, and neuropathy in her feet and legs which can cause her to trip and fall. Bucher has a hernia for which she has had surgery twice, but it has not healed. She is unable to lift more than five pounds, and has carpal tunnel syndrome.

Plaintiff states she spends "most of my days in bed watching" television. Tr. 186. Sitting causes pain in her hip, and it is difficult to rise from a couch or chair that is too close to the ground due to knee pain. She can perform some household chores "sometimes" if she has enough pain medication. *Id.* Her 18 year old daughter takes care of Bucher and her husband, and does the cooking, cleaning, and most of the laundry. Bucher's mother-in-law does laundry and the dishes.

Pain in her hip, back, and knees wakes Bucher every couple of hours. She cannot sleep on her stomach because of her hernia, and medications keep her awake or cause her to sleep too much. Neuropathy in her legs and restless leg syndrome interrupt her sleep. Bucher is able to dress herself, although sometimes she requires assistance with pants, shoes, and socks. Tr. 188. She is able to shower but requires assistance to get into and out of a bathtub. When depressed,

she requires reminders to get out of bed and shower.   She makes sandwiches and microwaves food,  folds the laundry, clears the table, and puts dishes away.  These chores take between one half hour and a couple of hours to complete.  Tr. 190.  She can clean the bathroom, but not the bathtub, taking breaks to sit down.  Tr. 191.  She requires encouragement because she is afraid she will get hurt or fall, and requires help to bend, reach, or lift anything heavy.  She does not go outside often.  She shops for groceries for a couple of hours at a time, about once a month, using an electric scooter.  Her hobbies are reading, television, movies, and occasionally  knitting, sewing, and puzzles.  She reads less because medication makes her drowsy.  Bucher uses a computer.  She  goes to church once month "because I have such a hard time getting up out of the pews after sitting there for half an hour."  Tr. 192.  She is not socially active because of pain, concern that she will not fit into a chair, and she is embarrassed about her obesity.

Bucher states she can walk about five minutes before requiring ten minutes rest.  Tr. 193. She must adjust her position every ten minutes when sitting.  She cannot climb stairs because her knees and hips will give out.  She has trouble with memory and concentration because of her medications.  Bucher can do repetitive activities with her hand for 20 to 30 minutes before her hands go numb.  Tr. 194.  Stress causes depression and withdrawl.  Tr. 195.  She uses prescribed crutches and a brace for the past year when her knee or hip bothers her, for about one to two weeks per month on average.  Tr. 196.  Bucher takes Roxicodone which causes sleeplessness, sleepiness, memory loss, and loss of concentration.  Tr. 195.  She takes Gabapentin, which causes drowsiness, and Trazodone, which causes drowsiness.

/ / /

### III. The Hearing Testimony

On December 3, 2013, a hearing was conducted before an ALJ in connection with Bucher's application. Tr. 36-69. Bucher, her counsel, and a VE were present. Plaintiff testified that she was five feet seven inches tall, and weighed 379 pounds. Tr. 40. She lives in a two story home with her husband and daughter. Her husband is on disability for a bad back. Tr. 43. They will be insured through the Oregon Health Plan effective January 1, 2014. They have not had health insurance.

Bucher was a homemaker from 1993 through 2003. Tr. 44. From 2004 to 2007 she worked as a loan processor, and thereafter was an administrative assistant for about one year. She quit when she had failed hernia surgery and was on a wound pump for a year. Tr. 46. She did not seek other employment.

Plaintiff was taking Amlodipine, Losartan, and Maxzide for blood pressure, Gabapentin for neuropathy pain, Wellbutrin and Cymbalta for depression, and Trazodone for sleeping. Tr. 46-47. She had not had any mental health therapy for lack of transportation. She thought the Wellbutrin and Gabapentin were helping. The Trazadone was working. Tr. 47-48.

Bucher estimated she could walk 30 to 40 feet. She uses an unprescribed cane. Tr. 49. She can lift a gallon of milk. She can sit in a chair 15 to 20 minutes "but at the same time, I'm in excruciating pain." *Id.* Her twenty year old daughter does not work outside the home, she takes care of her parents. "[W]hen I started to go downhill, she just took over," when the daughter was 13. Tr. 49. Her daughter quit school and has mental problems including anxiety. The daughter's application for disability was denied. Tr. 50. Her daughter does the dishes. "She does pretty

much everything." Tr. 51.  Bucher gets up between 10 and 11:00 a.m. and will "attempt to be up and then that'll be foiled by hurting and I end up back in bed." *Id.*  She does not have bed sores.

Plaintiff managed a mobile home park for about two years until November 2011 in return for free cable television.  Tr. 53.  She did the billing from her bed, and collected the rent.  Her duties required about two hours work per month.

Bucher sits for 15 to 20 minutes and then goes back to bed.  She has a hard time standing up because her hip "will just go out." Tr. 55.  While sitting she moves about on the chair to get comfortable.  She has fallen four or five times.  She uses the cane all the time, except when she has a good day, about once every six months.  She can stand for about ten minutes before back pain causes her to sit.  Plaintiff is in bed about 20 hours a day.  Tr. 57.  It's "the only comfortable spot I can find. . . . once I'm down in bed for a few days, the depression takes over and then I just - - I sleep for three or four days.  I don't eat.  I don't get up.  I don't do much of anything.  I'll just go to the bathroom and back and go to sleep." Tr. 57.

Bucher testified that she has problems using her hands because sometimes they are numb, and she has numbness and tingling in her finger tips constantly.  Tr. 58.  If she uses her hands for more than five minutes they become numb.  She drops things because she cannot feel them.  The numbness and tingling can go up to her shoulder on her left arm with lesser symptoms in the right arm.  She does not have the strength to bend over without holding on to something. Sometimes she has shortness of breath, and her feet are always numb.  Sometimes the numbness extends to her thighs.  The neuropathy interferes with her sleep.  Plaintiff stated she did not have any side effects from her medication.  Tr. 61.  If she takes narcotics for pain it affects her

memory. Tr. 62. She does not have any problems with mental functioning when she is not on narcotics, and she was not on narcotics at the time of the hearing.

## ALJ FINDINGS

The ALJ applied the sequential disability determination process described above. At step one, the ALJ found Bucher had not engaged in substantial gainful activity from her alleged onset date of October 27, 2008, through her date last insured of December 31, 2013. Tr. 23.

At step two, the ALJ found Bucher had the severe impairments of morbid obesity, chronic back pain, right hip pain, chronic pain syndrome, lumbago, and carpal tunnel syndrome. *Id.*

At step three, the ALJ concluded that Bucher's impairments do not meet or equal the criteria for any condition in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* The ALJ found that Bucher had the RFC to perform light work, she can lift and carry 20 pounds occasionally and ten pounds frequently; she can stand and walk for six of eight hours; she can sit for six of eight hours; she can frequently balance; she can occasionally climb ramps, stairs, ladders, ropes and scaffolds; she can occasionally stoop, kneel, crouch and crawl; and she should avoid even moderate exposure to heights, hazards, and heavy equipment. Tr. 26.

At step four, the ALJ concluded Bucher was able to perform past relevant work as a loan processor. Tr. 31. As a result, the ALJ concluded Bucher has not been disabled from October 27, 2008, through December 31, 2013, her date last insured. *Id.*

/ / /

/ / /

/ / /

Page 11 - OPINION AND ORDER

# DISCUSSION

## I. Credibility

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter,* 504 F.3d at 1036.  When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen,* 80 F.3d at 1282.

Second, "if the claimant meets the first test, and there is no evidence of malingering, '" the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281).  It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993).  Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d

at 1284. The Commissioner recommends assessing the claimant's daily activities; the location,duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider...ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms...other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen,* 80 F.3d at 1284.

The ALJ discredited Plaintiff's subjective complaints because they were inconsistent with the objective medical evidence. Tr. 29.    The ALJ can consider inconsistency with the medical evidence in determining credibility, so long as it is not the sole basis for discounting a claimant's testimony. *Burch,* 400 F.3d at 681. The objective medical evidence does not support Plaintiff's claims of debilitating symptoms. As the ALJ noted, imaging studies of Plaintiff's back, hips, and knees consistently showed mild degenerative changes and/or no acute findings. Tr. 28, 387-88, 528-29, 560, 571-72, 601. Dr. Nolan's February 2012 evaluation revealed Plaintiff had a normal gait, could walk on her toes and heels, and had normal lower extremity strength. Tr. 28, 505-05.

Plaintiff points to x-rays documenting left knee osteophytes with arthritis. Tr. 556. She notes a June 2009 positive Tinel's of the right hand, abnormal sensory testing, and morbid obesity. Tr. 333, 506.

On this record, the ALJ properly considered inconsistency with the medical record as a clear and convincing reason that undermines Bucher's credibility.

The ALJ discounted Plaintiff's testimony based on her participation in daily activities inconsistent with disabling symptoms and limitations. Tr. 29. Activities are a proper basis for discounting credibility "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012).

Plaintiff testified that she spent 20 hours a day lying in bed, performing minimal chores, and relied on care from her 21 year old daughter. Tr. 49, 50-51, 57. However, in her December 2011 function report, Bucher stated she was able to do light household chores, including folding laundry, clearing and washing the table, putting dishes away, putting clothes away, and cleaning the bathroom. Tr. 19091. During a February 2012 consultative examination Bucher reported that she sometimes made breakfast, "tends to the needs of her husband," tries to help with the care of her mother-in-law, and does some of the housework. Tr. 501. The ALJ noted Plaintiff's testimony that she and her husband managed a mobile home park for about eighteen months, ending in November 2011. Tr. 28, 52-53.

The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch,* 400 F.3d at 680-81. The ALJ reasonably found that Bucher's daily activities conflicted with the degree of pain and limitation she alleged.

Finally, the ALJ noted inconsistencies between Bucher's claimed limitations and her demeanor at the hearing. Tr. 29. The ALJ cited Plaintiff's testimony that she could only sit for

15-20 minutes, but also testified she drove 45 minutes to attend the hearing.  Tr. 49, 41.  The ALJ noted Bucher sat through the entire hearing which lasted about 40 minutes.

On this record, the ALJ identified clear and convincing reasons, supported by substantial evidence, to find Bucher less than fully credible.

## II. Medical Evidence

Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007).  In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Id.* (Treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,*  495 F.3d at 632; *Widmark,* 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  *Widmark,* 454 F.3d at 1066 n. 2.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Page 15 - OPINION AND ORDER

## A. Carpal Tunnel Syndrome

The ALJ determined that Plaintiff's carpal tunnel syndrome was a severe impairment at step two. Tr. 23. Carpal tunnel syndrome is identified by a positive Tinel's sign. Raymond Nolan, M.D., examined Plaintiff in April 2012, and found that Plaintiff had positive Tinel's signs bilaterally, with normal grip strength bilaterally. Tr. 28, 505, 506. Dr. Nolan stated that "[r]epetitive hand and wrist activities might be problematic in reference to the presumptive diagnosis of carpal tunnel syndrome." Tr. 506.

The ALJ noted Dr. Nolan's opinion, and, citing the bilateral normal grip strength, found "[t]his suggests that the claimant's carpal tunnel symptoms do not cause any functional impairment. As a result, I find that the claimant does not require any manipulative limitations." Tr. 28. The ALJ formulated an RFC that did not include any manipulative limitations, and found at step four that Bucher was able to perform her past relevant work as a loan processor. Tr. 31. Work as a loan processor requires constant fingering. *Dictionary of Occupational Titles,* (4th ed. Rev. 1991), pg. 217, #249.362-022; *U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993), pg. 340.

Dr. Nolan's statement regarding potential problems from repetitive hand and wrist activities is speculative. In light of the finding that Plaintiff retained bilateral normal grip strength, the ALJ's determination that Plaintiff had no manipulative limitations is a reasonable interpretation of the evidence and supported by substantial evidence.

## B. Knee Pain and Obesity

Plaintiff reported knee pain in June 2011. Tr. 441. Her left knee was swollen, and her provider noted Plaintiff was "already on quite a hefty narcotic dose." *Id.* In January 2012 Mike

Schiferl, M.D., noted left knee pain "on/off over last year . . . worse when walking a lot." Tr.

556. Dr. Schiferl said xrays showed osteophytes consistent with arthritis. He administered an

injection. In April 2012 Dr. Nolan opined Bucher was able to sit for at least six hours in an eight

hour day and able to stand and/or walk between one and two hours in an eight hour day. Tr. 506.

In July 2013 Plaintiff reported bilateral knee pain and her left knee "locked up" on standing. Tr.

595. She had crepitus with walking and movement, and there was "some laxity" in the ACL.

The ALJ found Plaintiff's morbid obesity a severe impairment, but did not otherwise

reference this impairment. "The regulations only require that an ALJ consider obesity and its

effects when evaluating other impairments." *Wigmore v. Colvin,* 2013 U.S. Dist. LEXIS 65658,

at *46 (D. Or. Apr. 16, 2013); citing *Robbins v. SSA,* 466 F.3d 880, 883 (9th Cir. 2006).   Social

Security Rulings caution ALJs not to "make assumptions about the severity or functional effects

of obesity combined with other impairments. Obesity in combination with another impairment

may or may not increase the severity or functional limitations of the other impairment. [An ALJ]

will evaluate each case based on the information in the case record." SSR 02-01p, 2002 SSR

LEXIS 1*13.

Dr. Nolan is the only examining or treating physician to assess functional limitations in

Bucher's ability to stand and walk. The ALJ gave Dr. Nolan's opinion "little weight," citing Dr.

Nolan's assessment of Plaintiff's normal gait, ability to walk on her heels and toes, normal lower

extremity strength. Tr. 30.

The ALJ cited the minimal and mild findings in imaging studies of Plaintiff's back and

hips. Tr. 30. The ALJ may consider the objective medical findings when weighing a

physician's opinion. *Batson,* 359 F.3d at 1195. The ALJ cited  the opinions of state agency

reviewing physicians who reviewed the imaging studies and opined Bucher retained the ability
to stand and walk for six hours in an eight hour day. Tr. 30.

Plaintiff contends the ALJ should have included more restrictions in the RFC due to
Plaintiff's morbid obesity. "[An ALJ] may not make assumptions about the severity of
functional effects of obesity combined with other impairments. Obesity in combination with
another impairment may or may not increase the severity of functional limitations of the other
impairment. [The ALJ] will evaluate each case based on the information in the case record."
SSR 02-1p, *available at* 2012 WL 34686281, at *6. The ALJ appropriately considered possible
limitations arising from this impairment in the RFC finding. Tr. 27. Plaintiff has not pointed to
"any evidence of functional limitations due to obesity which would have impacted the ALJ's
analysis." *Burch,* 400 F.3d at 683. In addition, Plaintiff's past relevant work as a loan processor
is a sedentary job. Plaintiff cannot show that she would be incapable of performing the job at
this exertional level. Because the record does not establish any functional limitation not
accounted for by the ALJ's RFC finding, the ALJ did not err in evaluating Plaintiff's obesity.

## C. Neuropathy

The ALJ found Plaintiff's neuropathy was a non-severe medically determinable
impairment which improved with medication. Tr. 24. Plaintiff contends her neuropathy was not
controlled on medication, and noted Dr. Nolan's finding of bilateral stocking distribution
hypersensitivity to pinprick and deficit in light touch. Tr. 506.

Bucher does not identify functional limitations arising from neuropathy. The record does
not indicate whether neuropathy is increased by a specific activity. Therefore the ALJ's
determination that neuropathy is not a severe impairment is supported by substantial evidence.

**D.  Fibromyalgia**

The ALJ properly gave little weight to Dr. Nolan's diagnosis of atypical fibromyalgia. Tr. 29.  Dr. Nolan reported that Plaintiff did not have the requisite number of tender sites, but that he had "on occasion seen this fibromyalgia variant with unilateral presentation." Tr. 506. Social Security Ruling (SSR) 12-2p sets out the diagnostic criteria necessary to establish fibromyalgia as a medically determinable impairment.  SSR 12-2p, *available at* 2012 WL 3104869, at *2-3.  Dr. Nolan did not find the requisite criteria to diagnose fibromyalgia. Moreover, Plaintiff has not identified functional limitations arising from fibromyalgia.

The ALJ's rejection of Dr. Nolan's fibromyalgia diagnosis is supported by specific, legitimate, clear and convincing reasons supported by substantial evidence in the record.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this matter is dismissed.

IT IS SO ORDERED.

DATED this 16th day of June, 2016.

Honorable Paul Papak
United States Magistrate Judge